UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THE BEDWELL COMPANY,

        Plaintiff,

   v.

CAMDEN COUNTY IMPROVEMENT
AUTHORITY, HDR ARCHITECTS AND
ENGINEERS, P.C., ARCHITECTS
ENGINEERS PLANNERS, P.C.,

        Defendants,


CAMDEN COUNTY IMPROVEMENT
AUTHORITY,
        Crossclaimant,

   v.


HDR ARCHITECTS AND ENGINEERS,
P.C.,
        Cross Defendant,


CAMDEN COUNTY IMPROVEMENT
AUTHORITY,
        Counterclaimant,
   v.

THE BEDWELL COMPANY,
        Counter Defendant.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 14-1531
(JEI)

**OPINION**

1

**APPEARANCES:**

BERKOWITZ & ASSOCIATES, PC
Steven A. Berkowitz, Esq.
10000 Lincoln Drive East, Suite 202
Marlton, NJ 08053
        Counsel for Plaintiff/Counter Defendant The Bedwell
        Company

PARKER MCCAY P.A.
Elyse G. Crawford, Esq.
Richard W. Hunt, Esq.
Three Greentree Centre
Route 73 & Greentree Road
P.O. Box 974
Marlton, NJ 08053
        Counsel for Defendants/Crossclaimant/Counterclaimant
        Camden County Improvement Authority

TESSER & COHEN
Francis A. Kirk, Esq.
946 Main Street
Hackensack, NJ 07601
        Counsel for Defendant/Cross Defendant HDR Architects
        and Engineers, P.C.

**Irenas**, Senior District Judge:

This breach of contract and business torts dispute comes before the Court on HDR Architects and Engineers, P.C.'s ("HDR") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). HDR seeks dismissal of those claims asserted against it by Plaintiff The Bedwell Company ("Bedwell").[1]

HDR served as the architect on a construction project that became known as the Cooper Medical School of Rowan University (the "Project"). Bedwell served as one of the Project's contractors. According to Bedwell's complaint, HDR's defective designs caused damages in excess of $3 million, rendering the architecture firm liable in tort.

In response, HDR argues the economic loss doctrine precludes Bedwell's claims, and in the alternative, the factually deficient complaint fails to set forth all the claims alleged.

For the reasons stated below, the Court will grant in part and deny in part HDR's motion.

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The parties agree that New Jersey law applies.
   Although not a party to the instant motion, Camden County Improvement Authority filed a brief in opposition to HDR's motion. (See Dkt. No. 16)

3

## I.

On September 8, 2006, the University of Medicine and Dentistry of New Jersey ("UMDNJ") contracted with HDR to design a medical school in Camden, NJ (the "Design Agreement").   In December of 2009, UMDNJ assigned the Design Agreement to Rowan University.   Rowan immediately demanded that the Project increase from five stories to six.   (Compl. ¶ 12)

In April of 2010, Camden County Improvement Authority ("CCIA") became the exclusive development and contracting agent for Rowan.   CCIA agreed to oversee the design and construction of the Project.

In July of 2010, CCIA contracted with Joseph Jingoli and Son, Inc. ("JJS") to serve as the Project's construction manager.   (Compl. ¶ 18)

In September of 2010, deeming the design documents sufficiently complete, CCIA put the base structural portion of the Project out to bid.   (Compl. ¶ 19)  Bedwell bid on a portion of the construction referred to as the Foundations and Structural Steel.   CCIA accepted the bid.   Bedwell and CCIA entered into a contract on October 25, 2010 (the "Foundations Contract").[2]   (Id. ¶ 21)

---

[2] The Foundations Contract is referred to in the Complaint as "Contract #2."

4

Deeming the remaining design documents sufficiently complete, CCIA put the latter stages of construction out for bid.  Bedwell again submitted the winning bid, and entered into a second contract with CCIA on February 28, 2011 (the "Construction Contract").[3]

HDR was aware that the design documents it authored would be used by contractors such as Bedwell to estimate costs and dates of completion.  (Compl. ¶ 35)  From the inception of construction, however, defects in the design documents caused unexpected costs and numerous delays.  (Id. ¶ 52)

The documents underlying the Construction Contract proved particularly troubling: 212 Requests for Information ("RFI's") and 469 Change Order Proposals ("COPs") were submitted.  (Compl. ¶¶ 77, 82)

In light of the delays, CCIA, HDR, and JJS utilized a "Fast-Track" management format despite the fact the bid documents called for a "Design-Bid-Build" format.  (Compl. ¶¶ 54-55)  The change further injured Bedwell.

Also troubling, the parties could not agree on the causes of the ever increasing cost of the project:  Bedwell submitted a Request for Equitable Adjustment ("REA") in support of one COP,

_____

[3] The Construction Contract is referred to in the Complaint as "Contract #3."

5

No. 467, for $2,620,130. JJS contested the request and HDR neither supported nor opposed it.

In total, the changes in design and resultant delays cost Bedwell $3,887,557.30.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998) (citing Warth v. Seldin, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be

6

sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." See id. at 570; see also Umland v. PLANCO Fin. Serv., Inc., 542 F.3d 59, 64 (3d Cir. 2008).

"[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 663-64 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." Id. at 678.

## III.

Bedwell brings four causes of action against HDR: negligence; tortious interference with contractual relations; "negligent misrepresentation of business information"; and professional malpractice. (Compl. ¶¶ 124-160)

HDR moves to dismiss on several grounds. First, it argues the economic loss doctrine requires the dismissal of all claims, all of which sound in tort. Second, Bedwell's tortious interference claim should be dismissed because Bedwell has

failed to plead facts probative of malice.  Third, because no
cause of action exists for "negligent misrepresentation of
business information," the claim must be stricken.  And fourth,
professional malpractice subsumes negligence, and thus the
negligence cause of action should be dismissed.  Each argument
is addressed in turn.

## A.

The economic loss doctrine helps maintain the "critical"
"distinction between tort and contract actions" by precluding a
party's tort action when the claim (i) is brought in addition to
a contract action, and (ii) does not stem from an independent
duty of care.  Saltiel v. GSI Consultants, Inc., 170 N.J. 297,
310 (2002).  The doctrine does not bar the instant claims.

The Court's recent ruling in SRC Construction Corp. of
Monroe v. Atlantic City Housing Authority, 935 F. Supp. 2d 796
(D.N.J. 2013) is instructive.  Therein, a contractor brought a
negligence and breach of warranty action against an
architectural firm with whom it did not have a contract.  Both
parties were hired, independently, by the Atlantic City Housing
Authority, to build an assisted living facility.  The
architectural firm, like HDR here, argued that the economic loss
doctrine precluded the contractor's negligence claim and

required the firm to seek redress in contract against Atlantic
City.

The Court disagreed.  The Court noted that the doctrine, as
used by New Jersey courts, precluded negligence actions only
when the claimant and defendant had a contractual relationship
themselves.  Id. at 798.  The existence of a contract with a
third party, such as a project developer, did not trigger
application of the doctrine.  Id.  Consequently, the Court found
the "absence of a contract between" the architect and contractor
"preclude[d] the application of the economic loss doctrine."
Id. at 799.

HDR attempts to circumvent this clear holding by arguing
that the contracts between Bedwell and CCIA, and between HDR
with CCIA, are different than those used by the SRC parties.
(See Br. at 7 ("Contrary to the facts in the SRC decision the
plaintiff in this action was explicitly advised that it had no
privity with the design professionals."))

The argument misses the point.  Except for limited
circumstances not present here, a contract cannot define the
legal obligations between two entities unless those two entities
are parties to the contract.  Beth Schiffer Fine Photographic
Arts, Inc. v. Colex Imaging, Inc., Civ. No. 10-5321, 2014 WL
1908500, at *3 (D.N.J. May 13, 2014) ("Ordinarily, a party not a

signatory to a contract cannot be bound by terms of that contract.").[4]

Here, Bedwell and HRC did not enter into a written contract, and no oral agreement is alleged in the complaint. Consequently, the obligations of the parties are defined by tort law, unaffected by third-party agreements.  And New Jersey tort law holds that the economic loss doctrine does not preclude Bedwell's instant claims.  See SRC, 935 F. Supp. 2d at 801; Conforti & Eisele, Inc. v. John C. Morris Ass'ns, 175 N.J. Super. 341, 344 (Law. Div. 1980) ("To deny this plaintiff his day in court would, in effect, be condoning a design professional's right to do his job negligently but with impunity as far as innocent third parties who suffer economic loss. Public policy dictates that this should not be the law.  Design professionals, as have other professionals, should be held to a higher standard.")

---

[4] In addition to drawing the Court's attention to contracts to which HDR was not a signatory, HDR argues that Horizon Group of New England, Inc. v New Jersey Schools Construction Corp., 2011 WL 3687451 (N.J. Super. Ct. App. Div. Aug. 24, 2011) calls for dismissal of Bedwell's claims.  (Br. at 3-4)  But as the Court held in SRC, Horizon "cannot be reconciled" with the weight of New Jersey law and thus does not control the Court's analysis. SRC, 935 F. Supp. 2d at 800.

**B.**

In the alternative, HDR argues that Bedwell's tortious interference claim must be dismissed because the Complaint fails to allege HDR acted with malice.  The Court agrees.

The tort of interference with a business relation or contract contains four elements: (1) a protected interest; (2) malice—that is, defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages.  MacDougall v. Weichert, 144 N.J. 380, 404 (1996); DiMaria Const., Inc. v. Interarch, 352 N.J. Super. 558, 567 (App. Div. 2001).

"Malice" as used in the tortious interference cause of action is not construed as ill will toward the claimant.  Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 751 (1989).  Rather, malice is defined to mean that the interference was inflicted intentionally and without justification or excuse.  Id.

Here, Bedwell avers that HDR "prepared severely deficient design documents [that] interfered with Bedwell's ability to perform" and also "fail[ed] to issue a written decision favorable to Bedwell" in response to its Request for Equitable Adjustment.  (Compl. ¶¶ 34-36, 92)  Bedwell adds that HDR made Bedwell "the scapegoat" when reporting to CCIA.  (Id. ¶ 131)

11

Such allegations are insufficient to withstand a 12(b)(6) motion.  The only factual matter asserted is that HDR did not issue Bedwell a favorable decision with regards to its REA.  How such conduct exceeds standard business morality, however, is unexplained.  See John C. Evans Project, Inc. v. Valley Nat. Bancorp., No. L-4883-07, 2012 WL 1581148, at * 8 (N.J. Super. Ct. App. Div. May 8, 2012) ("To constitute a wrongful act for [tortious interference], the conduct must be transgressive of generally accepted standards of common morality or of law.")

Further, Bedwell's conclusory statements, even if supported by factual allegations, fail to allege that HDR's interference—as opposed to its authoring of the documents—was intentional. See Printing Mart-Morristown, 116 N.J. at 751 (holding that a defendant liable for tortious interference must have interfered intentionally).

Consequently, Bedwell's tortious interference claim will be dismissed.

## c.

HDR claims that "negligent misrepresentation of business information" is not a recognized cause of action, and consequently the claim should be dismissed.  In response, Bedwell concedes that no such tort exists, but argues that

12

"negligent misrepresentation" is a recognized tort and such a claim is properly asserted here.   The Court agrees with Bedwell.

HDR appears to argue that Bedwell's inclusion of three extraneous words, "of business information," precludes prosecution of a claim for negligent misrepresentation.   (See Reply Br. at 6)   Such an argument, however, relies on a standard of specificity the federal courts' notice pleading standard does not require.   Thomas v. Independence Twp., 463 F.3d 285, 295 (3d Cir. 2006) (holding that notice pleading requires only that a complaint give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests).

Rather, Bedwell clearly alleges that HDR represented to it that the Foundations and Construction contracts could be completed with the design documents in accordance with the project management methodology contained in the bid documents; (Compl. ¶ 145); that this representation was inaccurate (id.); and that Bedwell, reasonably relying on the representation, was damaged thereby.   (Id. ¶¶ 143-151)   Such allegations sufficiently set forth a claim for negligent misrepresentation. See, e.g., Kaufman v. i-Stat Corp., 165 N.J. 94, 109 (2000) (holding that a negligent misrepresentation claim is set forth when the claimant alleges that an incorrect statement is negligently made, justifiably relied upon, and results in economic injury).

13

Accordingly, HDR's motion as to Bedwell's negligent misrepresentation claim will be denied.

### D.

Finally, HDR argues that Bedwell's malpractice action "subsumes" its negligence claim, and consequently the negligence claim must be dismissed. (Br. at 14-15) The Court agrees.

First, the Court notes that Bedwell's negligence action, titled "Negligence, Wantonness, Willfullness, Recklessness, and Intentional Misconduct," (Compl. ¶ 124), is really one for professional malpractice. Bedwell alleges that HDR "owed a duty to bidders to supply them with drawings properly prepared in accordance with the standard of the profession and in compliance with code requirements," and yet failed to act in accordance with its obligation. (See Compl. ¶¶ 127, 129) This is a claim for malpractice. See Hanson Eng'g, Inc. v. Ascher, Civ. No. 07-2651, 2008 WL 1782392, at * 3 (D.N.J. Apr. 18, 2008) ("[I]n the context of malpractice suits," "professionals" "owe a duty to perform the services for which they were retained in accordance with the standards of [their] profession[s]").

Second, under the facts alleged, negligence and professional malpractice utilize the same standard of care with which to judge HDR's conduct.

14

In its opposition brief, Bedwell argues without any legal support that HDR's conduct should be analyzed "against the standard of a 'reasonable person,'" and separately, against "that of a 'reasonably prudent member of the profession.'" (Opp'n Br. at 22)  But in negligence actions, the reasonable person is "under the same or similar circumstances" as those facing the defendant. <u>Sutkowski v. Tymczyna</u>, 2010 WL 4721156, at *7 (N.J. Super. Ct. App. Div. Nov. 23, 2010) (quotations omitted).  And here, HDR is a member of a well regulated profession.  Consequently, its work will be analyzed under the standards of that profession.

## IV.

For the reasons set forth above, HDR's motion to dismiss will be granted in part and denied in part.  Bedwell's claims for negligent misrepresentation and professional malpractice may proceed; its claims for negligence and tortious interference will be dismissed.  An appropriate order accompanies this opinion.

Date: 7/14/14

Joseph E. Irenas, S.U.S.D.J.

15